Friedman v. Experian Equifax and TransUnion Risk May it please the court, my name is Neil Brickman of the Law Offices of Neil Brickman and I Jacob Friedman. This is, as it relates to the standing issue under the Fair Credit Reporting Act, a very important case. Indeed, it's a case of first impression before this court. The seminal question presented by this appeal is when, under Spicchio and its progeny, including Struble, the defendant's willful violation of the Fair Credit Reporting Act was a bare procedural rather than a substantive violation that threatened the very protections afforded by the statute for standing purposes. How is that issue properly before this court, given that Mr. Friedman, granted when he was pro se, did not object to the magistrate judge's recommendation that the court find that Spicchio was a problem here? Your Honor, to the extent there's a waiver argument by not objecting to the magistrate's order, that's a non-jurisdictional question and it's left at the discretion of this court to determine whether the underlying claim has substantial merit and whether the magistrate committed plain error or there would be an injustice accompanied by the failure of this court to hear this appeal. I recognize that it's non-jurisdictional. Does it not matter that Mr. Friedman, again, albeit pro se, is a sophisticated businessman? He clearly understood the rule because he did object to other things that the magistrate judge recommended. First magistrate's order. The first time, yeah. Well, I mean, did he forget the second time that he's supposed to object if he doesn't like it? Well, whether or not he forgot, and I can't shed any light on that other than to tell you there was great turmoil. His attorneys who had represented him in this case had recently withdrawn. He wasn't appearing pro se all the time, but the attorneys had withdrawn. There is an ongoing dispute with those attorneys related to another matter. But in terms of the fact that he was pro se, I mean, was he represented when he filed objections the first time? Yes, Your Honor. And the second time he was pro se? Correct. His attorneys at Herrick Feinstein had just withdrawn, and that's part of the record. So then would you agree that there's a waiver as to any of the issues that were addressed in the first report and recommendation that were not objected to? Or are you trying to raise those two? No, Your Honor. What we're raising on this appeal are some objections to that first recommendation, but they were objected to. That's the preemption issue. No, Your Honor. It's the no cognizable damages under the Fair Credit Reporting Act issue. I thought the thing... And also the preemption of the state law claims. I thought the thing that was objected to in the first R&R was only the preemption of the state law claims. Is that incorrect? That is correct, Your Honor. So you are contending that issues beyond the preemption issue that were addressed in the first R&R, but not objected to by counsel for Mr. Freidman, are still before us. We should excuse the waiver for that, too. Yes, Your Honor. Simply because the underlying appeal has substantial merit. It's a very important appeal for purposes of determining plaintiff's rights under the Fair Credit Reporting Act. And the magistrate below, and as a result of adopting the order, the judge below, we submit committed plain error. But... How can it be plain error given that Spokio is somewhat mis... I mean, is there some case that we can cite that just disposes of this case in your favor that makes this plain error by the magistrate judge in trying to sort out... On the standing issue, Your Honor? We believe there is, and it starts with a case from this court, Struble. Struble is the argument you'd make. Is the argument, and part of Struble that belies defendant's argument. Defendant's argument says cases like Batts and Feldheim. You shouldn't look at those because those aren't Fair Credit Reporting Act cases. Those are Fair Debt Collection Act cases. But yet they recognize that Struble, which is a Truth in Lending Act case, not a Fair Credit Reporting Act case, sets the standard in this circuit to determine whether a violation of a statute, and we have the magistrate's ruling that a reasonable jury could in fact find a willful violation on the failure to reinvestigate and correct an error once it's been pointed out to them. Willful procedural violation as opposed to a malicious violation aimed at this plaintiff, no? Well, again... There's some debate about how to construe willful, which complicates the claim of plain error. Correct. But the magistrate below determined that a reasonable jury could conclude that this constituted a willful violation of the Fair Credit Reporting Act. The question is not so much is it a procedural violation, because it does violate a procedure set out by the statute, but does that violation cause a material risk of harm to the very  Now, what's very interesting, and Clarence Darrow penned an admonition decades ago where he said, laws should be like clothes. They should be made to fit the people they are meant to serve. And that's exactly the instruction, if you will, of Spokeo and then Struble, because Spokeo recognizes that Congress, in enacting new statutes, consumer protection statutes, can make what used to be a legally incognizable injury cognizable. Struble went a step further, and Spokeo gave us some instruction when it said, we're not talking about an incorrect zip code. That doesn't rise to the level of protecting the interest for which the statute was created. But Struble, which held that the procedural violations threatened the very protections afforded by the Truth in Lending Act, said that those allegations, without an allegation of additional harm, satisfy Article III standing requirements. And that was from this Court, Struble. As it boils down in this case, the issue is whether the reporting agencies knew that either the Atlantic concrete judgment had been vacated or the Porsche financial account had never been charged off. What's the basis for assigning mens rea, if you will, to those agencies? Well, what the magistrate below found is that there is a duty under, and it's very difficult to cite these Fair Credit Reporting Act sections, it's 1681, little i, A1A. If a consumer, like Mr. Freidman, points out an error in your credit reporting, you are under a duty to reinvestigate that report and correct it if it, in fact, is erroneous. Now in this case, what the record shows is that all the credit reporting agency did was send the inquiry to the same LexisNexis search they had done the first time. And the magistrate specifically found that under Jones v. Experian, that isn't enough. And that constitutes a willful violation of their duty to do something more once an inaccuracy is reported. They didn't do anything more. And they continued to report this judgment, which is probably the biggest problem, that had actually been vacated. So was the magistrate's determination in that regard a determination of fact or a determination of law? It strikes me as it's a determination of law, which we're free to review and either agree or not agree with your argument. Absolutely, Your Honor. However, remember, the standing argument, not talking about the first magistrate's report, which was based on a summary judgment motion, the standing argument in the report and recommendation of the magistrate in the standing case was on a motion to dismiss. On a motion to dismiss, you have to accept the allegations, which the magistrate acknowledged as true. And they're saying, and unfortunately the court below agreed with them, despite we submit unanimous law to the contrary, that this violation that is alleged and a reasonable jury could find it to be willful, was a bare procedural violation. The kind of an inaccurate zip code or printing on the receipt of a credit card that goes into someone's pocket and did not, excuse me, did not threaten, materially put at risk the very protections afforded this act. But isn't there some debate about that? This is back to Judge Lynch's original question. I mean, what's the clear indication out there that this, or what is the indication out there that this was clear error, as opposed to something that needs to be wrestled with? The clear error, if Your Honor please, is that it runs contrary, absolutely smack dab contrary to Spokeo, to Struble, to Batts, to Feldheim. For instance, Feldheim and Batts, in the cases from other jurisdictions, post-states Spokeo. And Batts and Feldheim post-states Struble. And what they all say is, if you identify the purpose of the statute, and here the purpose is very, very clear, it's to prevent inaccurate credit reporting, and to allow a consumer to object to that credit reporting, and then trigger a duty to reinvestigate. That's the purpose of the statute. If the violation that's alleged goes to the very protections afforded by that statute, Spokeo answers your question. Struble clarifies the answer, and Batts and Feldheim absolutely nail it. Let me ask you this. This goes back to Judge Lynch's initial question, but let's assume that these are important questions that are likely to affect other people, which seems to be your premise. Your client waves the living daylights out of this by selectively objecting the first time and by not objecting the second time, and is also a non-practicing attorney. Under what, what's the reason of all cases for us to exercise our discretion, overlook the double waiver, and allow this to go forward? What message does it send to people as to whether to object in another case? How would we ever say to a pro se person who waved under similar circumstances, your waiver doesn't bar you on appeal? Well, unfortunately, Your Honor, the facts of the waiver exist. What would compel this court in its exercise of its discretion to excuse that waiver in this case is that a very, very important Consumer Protection Act enforcement mechanism is at issue, and my friends of the credit reporting agencies would love nothing better to say, boy, we skidded on this one because we had a pro se litigant who didn't object. Well, if they skid on this one, and it's really such an important issue, they better know that they're not going to skid on the next one, where somebody has the wit to object. Well, perhaps that's the case, but that's a very ephemeral protection to afford consumers when you have before you the opportunity to address— It's different than if Mr. Freidman had decided it wasn't worth suing. If it's really an important issue, it's going to keep coming up, and then we'll get to it in an appropriate case. It's not like . . . I should have thought that the issue of prejudice that's important is how Mr. Freidman is harmed, not that it's an important issue in the abstract that it is going to be a problem for somebody else. It's not like we're deciding that the district court . . . we would be deciding the district court was right. It is not even a district court opinion, really, to speak of. It's just something it wasn't objected to. Your Honor, I understand that part of our argument is that Mr. Freidman was horribly damaged by this. That's another interesting thing, right? That's a very interesting thing. That's yet another interesting theoretical issue that the . . . I believe that was in the first opinion, right? That's something that fancy lawyers decided not to object to. I won't characterize the lawyers as fancy or competent or that they may have overlooked something. Your Honor, the problem with the damages here, and again, it's an issue that was skirted by a bit, Mr. Freidman's damages were he had created single-purpose entities which had no credit history at all to do these real estate transactions. He was either a co-signer personally on those loans or a guarantor on those loans. There's no real business credit reporting agency anymore, particularly when these are . . . Can I ask you, though, doesn't even the fact that we're wading into consumer versus business illustrate the risk that even if we overlook the waiver, this case could become a one-ticket, one-train only? If the whole point of overlooking the waiver is to come up with . . . to resolve an overarching question of public importance that for some reason isn't going to come up soon anyway, why would this be the right vehicle to do it given that there's a substantial claim as to whether there's a consumer as opposed to a business injury? Well, Your Honor, because that is the alternative argument. The seminal argument is that you can make an allegation of a substantive violation of a statute that threatens the protections afforded by that statute, and you don't have to allege any additional harm to satisfy the Article III standing. But that's Struble, right? The actual issue here is whether in this particular type of violation of this particular statute is such a non-procedural violation, much less sweeping than . . . I mean, Struble already has decided that spokio does not mean that Congress can't ever provide private rights of action the way some people might have feared. It means that we have to distinguish procedural, trivial things from things that create a great risk. Of what the statute . . . Of what the statute is trying to prevent, right? But now the issue is, with respect to this particular statute, is this particular subsection that was violated here such a substantive provision? And it seems to me you have a very nice argument that it is, but that's not quite as sweeping as . . . That's got to do with this particular issue. Well, the problem is, and why I initially stated that it's important for this Court to weigh in on this issue, Struble is a Truth in Lending Act case, and the harm that was threatened in Struble is not the same protections as afforded by the Fair Credit Reporting Act. Exactly. But the . . . In the Fair Credit Reporting Act, it's not as if this case raises the question, is everything in the Fair Credit Reporting Act substantive? Of course it doesn't. Right. It's this particular reinvestigation claim. Correct, Your Honor. And similarly, even with Struble, it's not like the Truth in Lending Act is now suddenly everything in the Truth in Lending Act counts. There are going to be like dozens of these cases with all kinds of wrinkles with respect to different administrative requirements established by these consumer protection statutes. They're all narrow in a certain sense. Well, it's a very interesting question, Your Honor, because in Struble, two out of the four disclosures were determined to be substantive, triggering standing. Exactly. Two of them were not. The very interesting aspect of this . . . My point is just, it's not exactly like these are plain errors, see Struble. It's each and every one of these cases that will ever come to us will present a slightly different case, or as in Struble itself, four different cases for us to evaluate these subtle questions of what counts and what doesn't. Perhaps, Your Honor, but the instructive case from which the argument comes is Spokao, which is a Fair Credit Reporting Act case. So the only instruction we were given in Spokao was we knew that the publication of an incorrect zip code was a procedural violation that didn't threaten the protections afforded by the statute. What Struble then does, and what Batts does, and what Church from the 11th Circuit do, is they point out that these violations, and Church is a very interesting case from the 11th Circuit . . . Mr. Berkman, we're going to hurry you along here . . . I'm sorry. . . . since you're all over your time. Why don't I . . . And I've kept you up there, so it's not your fault, but thank you. Why don't I save the rest of my argument for . . . Yes. You have time reserved for rebuttal. Ms. Gelfman? May it please the Court? I represent Experian. There are three appellees here today, and in order to avoid repetition, we've divided up the topics. So I'll be addressing waiver and preemption. Counsel for Equifax will be discussing business damages, and Counsel for Appeal, and Article III standing. The reason that I'm addressing waiver and preemption is because if the Court agrees with us on those issues, they will dispose of the entire case. Waiver I'll begin with. In his briefing, Mr. Friedman questioned whether or not there in fact was waiver, but he appears to have conceded an argument today that the facts of waiver exist. So instead, he's really making two arguments, as far as I can tell, why waiver should be excused here. The first is he says that counsel for Mr. Friedman had, I suppose, dropped out of the case right before the objections. But I should note, there was no counsel at all points. Mr. Friedman was, in fact, pro se. There was no appearance. To the extent that he had counsel lurking in the background without having filed an appearance, that's not really the sort of sympathetic fact that urges excusal of waiver. And in addition, I note, he didn't ask for more time. The second argument that he's made, essentially, is that, well, I think I'm right on the merits. And because I'm right on the merits, it's in the interest of justice to excuse my waiver. But this Court has rejected that idea before. In Davis v. Garin, the Court said, no, if the underlying prejudice is just the claims you're making in your case, that is not a basis for excusing waiver. And that is a completely sensible rule, because otherwise, frankly, you'd completely undermine the waiver rule. Mr. Friedman waived, then, both his arguments about business damages and his arguments about Spokio or Article III. And the only argument that he preserved in his objections is his argument about preemption. But his state law claims here are preempted under 15 U.S.C. 1681 H.E. That rule says that any claims that are in the nature of negligence, invasion of privacy, or defamation, are preempted unless they are as to false information furnished with malice or willful intent to injure the consumer. Mr. Friedman's primary argument on this is that malice is the same thing as willfulness, as willful violation under 1681 O. But that is simply not the case. There's no Court that said that that's the case. Congress used different language. They used willful intent to injure and malice as opposed to willful violation. And malice has never been interpreted that way. Every Court that has interpreted it has either applied a common law malice standard or a constitutional malice standard. The common law malice standard in New York is spite or ill will, and Friedman points to no proof whatsoever of spite or ill will. The constitutional standard is that the defendant, in fact, entertained serious doubts about the publication. Again, Friedman points to nothing in the record that indicates that any of the CRAs, in fact, entertained serious doubts about the publication. I think the most important case for the purposes of constitutional malice is probably St. Amant, which is a Supreme Court case in which the Court said that the defendant needs to, in fact, have entertained serious doubts and further says that depending on a third-party source without any information in the record about the party's veracity, that is not malice. And says that failure to verify an information even if you are heedless about the consequences for a plaintiff, that is not malice. And most importantly, failure to investigate is not malice. What I was hearing Mr. Friedman's counsel say today is that the malice argument boils down to failure to investigate, but St. Amant says that that is wrong. That is frankly all for both waiver and preemption. So if you have no questions, I'll cede my time to my other appellees. Fine. Thank you. Good morning. May it please the Court, my name is Danielle Chatton and I represent Equifax. As Ms. Skelfman just articulated, Appellant has waived any argument he has to the District Court's finding that his alleged business damages are cognizable under the FCRA, but to the extent he's still attempting to make that argument on appeal, that finding should be affirmed because it's undisputed here that the only damages that Appellant has asserted throughout the litigation in the District Court were undisputably business transactions, commercial transactions that are not recognized as damages under the FCRA. He claims that due to inaccurate credit report entries on his personal credit report, he was either denied or offered unfavorable terms on a number of transactions, loans that he was applying for either on behalf of, it's a little unclear, but on behalf of himself or LLCs, shell entities that he created to affect a variety of interconnected real estate ventures. Now the record is complicated with respect to these transactions, but it's undisputed that at base they were for commercial purposes and situations very similar to those that Appellant has argued he suffered damages have been rejected by courts under this very same argument, conflating commercial with consumer damages. He claims that these damages are very personal to him and unique in his principle. In these entities, sometimes he was the sole owner, but many times he was not, that the losses that he, from the denial of these loans flow to him personally, but these kinds of transactions are no more personal to him than many of the cases that we've cited in our briefs where this exact argument has been rejected. One very good example is Lucezzi v. Experian in the Southern District of New York. In that case, Plaintiff, like Appellant, was the principal of a moving and storage company that he owned. He was looking to . . . Is there any binding authority supporting that position? I mean, you've got the various district court cases. District court cases . . . We will, you know, we very much respect what our district judges do as persuasive authority, but has any case from the Supreme Court or this court ever addressed the question at all of whether a personal credit report, a consumer credit report, that is erroneous and actionable, we'll assume for this purpose it's actionable, that affects that consumer's business activities does not give rise to cognizable damages? No opinions from this court or the Supreme Court, although, as you've noted, a number . . . This is a case of first impression for us, whatever the various district courts might have said about it, which is instructive. Right. It would be a case of first impression if the Appellant had not waived the argument in the district court, but the Fifth Circuit has weighed in on this and agreed with those district courts, as well as the Seventh Circuit, and as you've noted, a number of district courts in our circuit here, the Eastern District of New York in George v. Equifax Mortgage Services specifically addressed whether or not these . . . a credit report that's being taken out on behalf of an individual person's credit to be used for a business transaction. That precise argument was addressed by the Eastern District of New York and found it to be non-persuasive in this situation. So just very briefly, I'll just note that Appellant's main argument is that these types of damages should be recognized by this court because it would go to the intent of the FCRA to meet the needs of commerce and be construed broadly, but the FCRA is very specific, the text of the statute is very specific, that it is intended to protect consumers, which it defines as individuals, and for the purposes of primarily household, family, or employment purposes, none of which are covered by the damages asserted by Appellant here today. Thank you. Thank you, Ms. Chott. Ms. Nicodemus. May it please the Court, I'm Camille Nicodemus representing TransUnion in this matter. I don't know, the podium may come down a little bit so that, that's fine too. Is that better? Okay. Thank you. Plaintiff has waived Appellate review of the District Court's decision dismissing his FCRA willfulness claim against defendants by failing to file the required objections to the Magistrate's report and recommendation. The Court should not set aside that waiver for the reasons stated by Counsel for Experian, but if the Court were to do so and review whether Plaintiff has Article III standing to assert his claim for a willful violation of FCRA 1681, the Court need only reaffirm the principle that a violation of a statute that causes no harm does not trigger a Federal case. Not risk of harm, I thought the standard was harm or risk of harm. Yes, or risk of harm, and the District Court here correctly held that Plaintiff Is there not a risk of harm if a consumer credit reporting agency fails to adequately reinvestigate, and what is the point of the requirement of reinvestigation if not to try to make sure that the substantive information is correct? Spokaea was very instructive in this regard with respect to analyzing 1681EB and 1681I under the FCRA. EB is a provision which requires the CRAs to use reasonable procedures to assure maximum possible accuracy under the statute, and I requires them to conduct a reasonable reinvestigation when the Plaintiff makes a dispute. Spokaea held that EB was a procedural requirement and did not rule on I because it was not at issue in that case. I is the provision of the statute that is at issue in this case, and Plaintiff has proffered the argument that it should be distinguished from EB and that it should be a substantive rather than a procedural right, and I think that the terminology gets a little confused here. The premise of the reinvestigation is that false information, at least according to the consumer, has already been reported, and now the consumer complains about that, and the next thing that's supposed to happen is to do a reasonable reinvestigation to make sure that the information is accurate. If you don't do a reasonable investigation and the result is that the inaccuracy remains, at least clearly that's the very risk that the reasonable reinvestigation is supposed to prevent, is it not? Well, it has to be a risk, a cognizable risk under the statute, and in this case Plaintiff presses only damages to his business interests. Well, that's a different issue, though, isn't it? I mean, that's not the Spokaea issue. That's the issue of whether if they do have standing they actually have any damages. Actually it's that the risk has to, the increased risk has to impact a right that's protected under the statute. And it just turns out that at the end of the day the only harm that he says he suffered is to his business, which may or may not, this Court has never spoken to that issue, be cognizable damage under the Act. That's a substantive issue that we would get to if there were standing. So then we look to see if there's standing, and at the moment that the reasonable reinvestigation allegedly fails, we don't know how that's going to harm Mr. Freidman. It's presumably going to harm him somehow if he's got a bad credit report that is inaccurate, and maybe it will harm him when he applies for a new consumer credit card, or maybe it will harm him when he applies for a business loan, and one of those may be damages he can sue about and the other may not. But either way, is it not the very risk that the FCRA is supposed to be guarding against that is risked if you don't do a reasonable reinvestigation? In this case, which distinguishes it from cases such as Spokio and other instances, the Court has already determined the scope of his damages. Discovery has concluded. So we have no standing under Spokio because it's purely a procedural violation, and we know that because the Court has already adjudicated the substantive issue that you say should never have been reached because he didn't have standing in the first place. That's your argument? No. It's a procedural violation because under Spokio, the reasonable — it's a procedural violation first and foremost because the statute itself refers to reasonable procedures with regard to the reinvestigation and reasonable procedures with regard to — Is it a purely verbal thing that if there's anything to do with procedures, it doesn't matter whether as a substantive matter of the actual harms and the actual risks that occur in the very way that the statute tries to prevent, but that doesn't matter because they say reasonable reinvestigation, which inevitably involves what did they do and how did they do it, which is their procedures for doing an investigation. That's your argument? No. Let's look at Struble, which I think will be instructive here. There were violations of the statute in that case. The defendant failed to provide the required notice in four separate instances to the plaintiff. In two of them, those instances made a difference because the plaintiff was uninformed about their rights with regard to complaining about charges on their credit card and how to go about following these procedures. In the other instances, they were also given incorrect information. There was a violation of the statute with regard to whether there would be automatic withdrawals in their — an automatic payment plan was not offered in that instance. And so there, the court held, this court held, that there was no risk of harm, right, because that program did not exist. So notwithstanding that there was a violation, notwithstanding the fact that the plaintiff was supposed to receive the information that the statute, the Truth in Lending Act, the purpose of it is truth in lending, provide this information to consumers so that they can proceed, you still have to assert, you have to tie your risk of harm to what the statute was trying to protect, and they weren't able to do that. I think in this case, plaintiff comes to this court asserting only business damages which are not covered by the statute. I think that to argue that he's able to assert a risk to an interest that's not protected by the statute — Okay. So the Spokio argument does blend into the argument that these are the wrong kinds of damages. If these were the right kind of damages, then you don't have a Spokio argument. Is that what you're saying? If we were to decide that the business damages are cognizable because it is a consumer credit report that somebody looked at to deny him the business loan, if we decide that that is a cognizable element of damages, then you no longer have a Spokio argument? Well, that would present a different set of facts, and as we heard earlier — I know, but we just have to know whether, assuming we get past the waiver argument, which we may not, we have to know whether we're confronting two different arguments or one argument that, if that one goes against you, we don't have to look separately at some different theory of a Spokio problem here. So the question is, on these facts, is your Spokio argument actually parasitic? I don't mean that in a pejorative sense. Is it just an aspect of your argument that the business damages are not cognizable? I think that they are very closely tied together because those are the damages that plaintiff is asserting on appeal. I would say, though, in looking at the application of Spokio to other cases, particularly in the case of Spokio, the inaccurate information about plaintiff in that case was out in the world. It was on the Internet. It existed. The plaintiff did not have to show that somebody used that information in a way that caused him damage or harm. He simply had to show that there was a risk the information was out there. There are also cases where data has been stolen. One example is where someone takes a credit report for an impermissible purpose. In that case, there's a violation of the statute. The information was disclosed without a permissible purpose. The plaintiff does not there have to also show that that report was used in some way that caused him damage. The damage itself is the violation of his right not to have the information. I think that just to clarify, the plaintiff was talking about whether there was a zip code. It's not so much completely limited to what is the information or what is the zip code. A zip code is a small thing and a civil judgment is a big thing. It's not really that comparison that what we need to do. We don't know exactly what we're supposed to do because the Supreme Court, other than the dictum, I think it's dictum really about zip codes, they just remanded in Spokio to say you have to look at this question of is there some real harm or risk of harm. My recollection is the Ninth Circuit decided that there actually was in that case a risk of harm. We don't have a Supreme Court case that tells us what is or is not a risk of harm. Yes, and the Ninth Circuit did in that case make that determination that there was a risk of harm, again, because the information was disclosed. I understand the argument. And I think that Excuse me, Ms. Nicodemus, you're taking too long of your time. Okay, thank you. We'll hear briefly from Mr. Brickman who I'll try to be very brief, Your Honor. Let's start backwards. Judge Lynch, I think you asked questions which indicated that unfortunately Ms. Nicodemus is conflating two issues, the Spokio standing issue I thought you might be happy that she's conflating two issues because that turns them into only one issue, and it seemed to me coming very close to abandoning the standing argument as it was formulated in the briefs. It may well, Your Honor, but the really instructive case on this matter is Struble. And in Struble, the Court specifically held that the plaintiff, Mr. Struble, having alleged a substantive statutory violation that threatened the very protections afforded by that statute was, quote, not required to allege any additional harm to demonstrate the concrete injury necessary for standing. So the whole discussion about this information was out there and that's the harm in Spokio recognized by the Ninth Circuit, that's exactly what you have here. Mr. Freidman's inaccurate information was out there. And Mr. Freidman took the steps, the procedural steps, and perhaps the word procedure is what's tripping us up a little, took the procedural steps prescribed by the statute to alert the credit reporting agencies to those inaccuracies and to trigger their reinvestigation obligations. We already have a decision on a motion to dismiss that the allegations of the complaint could be determined by a reasonable jury to say that those violations were willful. Also, what we haven't talked about, and I'll be very brief about that, is the Casella case, which specifically recognized, although it determined that there was no evidence of willfulness in that case, it specifically recognized the right to punitive damages in the event of a willful violation of a substantive right conferred by the Fair Credit Reporting Act. Here we have at least a jury question as to the willfulness issue, which, if the jury finds correctly, could result in punitive damages. Well, I'm assuming there's at least a jury question is a little bit short of saying it's a manifest injustice not to let the case go forward. Well, it's a manifest injustice because it leaves stand something that is plainly erroneous given the decision of this Court in Struble, given the Supreme Court decision, and by the way, the mention of a zip code comes right out of the decision in Spokeo in pointing out it's the only example they give. Mr. Friedman, can I just say one other thing? First of all, I want to compliment you for an excellent argument, and I'm sure there was no intention at all to mislead. I can't even imagine how it would help you to say that Mr. Friedman was represented by counsel, but I'm a fallible person. I come here, my understanding when I came here this morning was that Mr. Friedman had been pro se all the way through, but when a lawyer says to me, no, he had a lawyer at one point, I'm perfectly happy to take that as gospel since a lawyer is telling it to me, and I may well have made a mistake, but I did go back and look, and Ms. Gelfman seems to be correct. The complaint was signed by Mr. Friedman pro se. That is correct. The objection was signed by Mr. Friedman pro se. There certainly was no change on the record that I can detect with respect to his pro se status until you enter the case. And I apologize. There was no attempt to mislead anyone. I'm sure there was no attempt to mislead, as I say, but it's just, you know, be careful. I will tell you, and I think the defendants will acknowledge this, Mr. Friedman did not write any of the briefs. If he was ghosted, he was ghosted, but I just wanted to, you know— And I didn't mean to mislead, but that's what I was referring to. When we're having a discussion about what difference does it make that he objected in the first one, but he didn't object to the second, and you say he was represented on the first, when in fact, at least as far as the official record is concerned, he was not, and it would seem to be an entirely extra record fact if he had lawyers ghosting what he was submitting as a pro se, you know, I would appreciate being told what the actual circumstance is. The actual circumstance is as I've described it, however, I don't believe Herrick ever made an official appearance in this case representing Mr. Friedman. I think he proceeded pro se all along, but there was a lawyer there who, to use your word, ghosted him. I appreciate it. Again, I'm not saying, I'm not suggesting for a moment that it was intentional misleading. I'm just saying it's important to be very precise about these things because, you know, I'm happy to believe that I was mistaken about something, but I'm not so happy to be told I'm mistaken about something, the facts are actually different. Take that as a given, and then it turns out that I was right all along. I apologize, Your Honor. No problem. Thank you very much. Thank you. Thank all of you. We'll reserve decision in this case.